IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


REGINALD L. ODUM,

        Plaintiff,

vs.                                      Case No. 13-2135-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On August 18, 2009, administrative law judge (ALJ) Mary Ann Lunderman issued the 1st ALJ decision, finding that plaintiff was not disabled (R. at 153-158). On May 28, 2010, the Appeals

Council vacated the ALJ decision and remanded the case back to an ALJ for further hearing (R. at 160-163).

On September 23, 2011, administrative law judge (ALJ) Susan B. Blaney issued the 2nd ALJ decision (R. at 15-25). Plaintiff alleges that he had been disabled since December 22, 2007 (R. at 16). Plaintiff is insured for disability insurance benefits through December 31, 2008 (R. at 18). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 18). At step two, the ALJ found that plaintiff had a severe combination of impairments (R. at 18-20). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 20). After determining plaintiff's RFC (R. at 21), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 23). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 23-24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24-25).

**III. Does substantial evidence support the ALJ's RFC findings?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific

evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review. Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff could perform light work. According to the ALJ, he can stand for 6 hours in an 8-hour workday, allowing for no walking more than 2 blocks at a time as a job duty; and can sit for 6 hours a day, allowing for a sit-stand option. Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently. Plaintiff cannot work at heights or with dangerous machinery. Plaintiff can occasionally squat, kneel, stoop, and twist. Plaintiff cannot work on ladders, ropes, or scaffolds. Plaintiff can climb steps, but going up and down steps should not be part of his regular job duties. As a result of his illiteracy, plaintiff is limited to reading and writing only very simple words.

First, the ALJ found that plaintiff's reading disorder, or illiteracy, would result in some mental limitations to the extent reading generally is implicated in one's daily life. The ALJ found that plaintiff would have no more than mild functional limitations in activities of daily living, social functioning, and concentration, persistence and pace in activities not

7

requiring reading (R. at 21).  Plaintiff argues that the ALJ erred by not including these limitations in her RFC findings.

Once an impairment has been found to be severe at step two, it is error for the ALJ to fail to consider or include any mental limitation(s) in his/her RFC analysis.  <u>Givens v. Astrue</u>, 251 Fed.Appx. 561, 567 (10th Cir. Oct. 18, 2007); <u>see</u> <u>Lafferty v. Astrue</u>, 559 Fed.Supp. 2d 993, 1011-1012 (W.D. Mo. 2008)(Dr. Bowles found that plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  Even though mental impairment found not severe, it cannot be said that there were no limitations caused by this nonsevere impairment.  The ALJ should have included the mild mental limitations found by Dr. Bowles or discredited his opinion).  The ALJ found that plaintiff's illiteracy or reading disorder resulted in some mild limitations in activities not requiring reading.  The ALJ's RFC findings only limit plaintiff to reading and writing very simple words as a result of his illiteracy.  The RFC findings, without any explanation, do not reflect the ALJ's own finding that plaintiff had mild limitations in activities not requiring reading because of his illiteracy or reading disorder.  According to <u>Givens</u>, it was error for the ALJ to fail to consider or include those limitations in her RFC findings.  Therefore, this case shall be

remanded in order for the ALJ to consider and/or include the limitations found by the ALJ in her RFC findings.

Second, plaintiff argues that the ALJ erred by omitting any limitations with respect to the swelling in plaintiff's legs which require him to elevate his legs. Medical records do state that plaintiff should elevate his legs (R. at 520, 624, 644). However, Dr. Dembinski, plaintiff's treating physician, did not recommend this limitation (R. at 652). Neither did Dr. Gaeta, a medical expert, who testified at the hearing (R. at 82-104). At the hearing, the vocational expert (VE) testified that many of the jobs identified would allow for elevation of the legs up to 8-12 inches; only elevation above that level would require accommodation (R. at 141, 143). Given the fact that neither Dr. Dembinski nor Dr. Gaeta recommended a limitation that plaintiff be allowed to raise his legs, the testimony of the VE that plaintiff could elevate his legs up to 8-12 inches at most jobs identified, and the absence of any medical evidence that plaintiff needed to elevate his legs more than 8-12 inches, the court finds no error in the fact that the ALJ did not include this limitation in her RFC findings.

Third, plaintiff argues that the ALJ erred by failing to include in her RFC findings the opinion of Dr. Dembinski that plaintiff is not capable of doing work requiring manual labor or lifting his arms above his head (R. at 652). The ALJ reviewed

9

the record, but could not find any reason for such limitations (R. at 22-23). Furthermore, the ALJ accorded "significant" weight to the opinions of Dr. Gaeta, who testified that he saw no basis for those limitations (R. at 103-104). Finally, the VE testified that even with the limitations set forth by Dr. Dembinski, it would not affect the answers the VE gave to the ALJ's hypothetical question (R. at 144-146). Thus, even if it could be argued that the ALJ erred by failing to include the limitations of Dr. Dembinski in her RFC findings, such failure is harmless error on the facts of the case.

**IV. Is there a conflict between the VE testimony and the requirements of the jobs outlined in the Dictionary of Occupational Titles (DOT)?**

At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the Commissioner may rely on the Medical-Vocational Guidelines (grids). 20 C.F.R. Part 404, Subpt. P, App. 2. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). The grids contain tables of rules which direct a determination of disabled or not disabled on the basis of a claimant's RFC category, age, education, and work experience. Thompson, 987 F.2d at 1487.

The ALJ found that plaintiff is illiterate, and can only read and write very simple words (R. at 21). The record shows that plaintiff tested in reading and language at a beginning literacy level (pre-K) (R. at 413, 19). The ALJ stated in the hypothetical question that plaintiff can read only very, very simple words such as "stop" and "go" (R. at 138). The ALJ found that plaintiff falls between rule 202.09 (disabled if illiterate) and rule 202.10 (not disabled if limited education or less, at least literate and able to communicate in English) (R. at 24).

Plaintiff points out that the VE testimony was that every job identified by the VE had a language level of 1 (R. at 139-141), which means the person recognizes the meaning of 2,500 (two- or three-syllable) words, can read at rate of 95-120 words per minute, and can write simple sentences containing subject, verb and object). <u>Dictionary of Occupational Titles</u> (DOT), (U.S. Dept. of Labor, 4th ed., 1991 at 1011). Plaintiff argues that there is a conflict between the VE testimony and the language requirements of the jobs identified by the VE given that plaintiff is at a pre-K reading and language level and can only read simple words such as "stop" and "go."

SSR 00-4p states that before relying on VE evidence to support a disability determination or decision, an ALJ must identify and obtain a reasonable explanation for any conflicts

between occupational evidence provided by vocational experts and information in the DOT [Dictionary of Occupational Titles] (including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)) and explain in the decision how any conflict that has been identified was resolved. 2000 WL 1898704 at *1. In making disability determinations, defendant will rely primarily on the DOT for information about the requirements of work. Occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE evidence to support a decision about whether a claimant is disabled. At the hearing level, as part of the ALJ's duty to fully develop the record, the ALJ will inquire, on the record, as to whether or not there is such consistency. If a conflict exists, the ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. 2000 WL 1898704 at *2.

The VE testified at the hearing that his testimony was substantially consistent with the DOT and its companion publication, but the VE further stated that he supplemented his

testimony based on his education, training and experience (R. at 142). At the hearing, the VE was asked what a language level of 1 meant; the VE testified that it is the equivalent of language skills at the first to third grade level (R. at 142).

To the extent that there is any implied or indirect conflict between the VE's testimony and the DOT, the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so. All kinds of implicit conflicts are possible and the categorical requirements in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. Dec. 18, 2003)(quoting with approval Carey v. Apfel, 230 F.3d 131, 146-147 (5th Cir. 2000); see Schassar v. Astrue, 2009 WL 3241597 at *5-6 (D. Kan. Oct. 5, 2009).

Beyond asking the VE about what a language level of 1 meant, plaintiff's counsel did not question the VE about the alleged discrepancy between the requirements for a language level of 1 and whether plaintiff could perform the jobs

identified by the VE given the plaintiff's limitations in reading noted above. Therefore, the court finds that the ALJ did not err in relying on the VE testimony. However, because this case is being remanded for reasons set forth above, this issue can be raised by the plaintiff.

Finally, plaintiff argues that the grids should have been conclusively applied to find plaintiff disabled because he is illiterate.[2] The ALJ found that plaintiff was illiterate (R. at 19). In his RFC findings, the ALJ stated that, as a result of plaintiff's illiteracy, he is limited to reading and writing only very simple words (R. at 21). In the hypothetical question to the VE, the ALJ stated that plaintiff has a limited reading and writing ability, and can read very, very simple words, such as "stop" and "go" (R. at 138). According to rule 202.09 a

---

[2] First, the grids provide that:
> However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional impairments.

20 C.F.R. part 404, Subpart P, App. 2, § 200.00(e)(2)(2013 at 611) (emphasis added).

Second, this issue was addressed in the case of Lounsburry v. Barnhart, 468 F.3d 1111, 1115-1116 (9th Cir. 2006). In that case the court held that, where application of the grids directs a finding of disability, that finding must be accepted by the Commissioner whether the impairment is exertional or results from a combination of exertional and non-exertional impairments. Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and nonexertional impairments, they may not be used to direct a conclusion of nondisability. In other words, where a person with exertional and nonexertional limitations is disabled under the grids, there is no need to examine the effect of the non-exertional limitations. But if the same person is not disabled under the grids, the non-exertional limitations must be examined separately. Therefore, under no circumstances may a vocational expert's testimony supplant or override a disability conclusion dictated by the Guidelines. Id.

14

person who is illiterate is disabled. According to rule 202.10, that same person in terms of age and previous work experience who is literate is not disabled. 20 C.F.R. Pt. 404, Subpt. 2, App. 2, Table No. 2 (2013 at 614).

If plaintiff is illiterate, as found by the ALJ, then rule 202.09 should govern and plaintiff should be found disabled. The ALJ has failed to explain how plaintiff falls between rule 202.09 and rule 202.10 given the finding that he is illiterate. Illiteracy is defined in the regulations as the inability to read or write. One is considered illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. 20 C.F.R. § 404.1564(b)(1). On remand, the ALJ should consider this definition and determine if he meets the definition of illiterate. If plaintiff is illiterate, then rule 202.09 directs a finding of disabled.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 26th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge